UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LORENZ DAHL III,<br><br>    Plaintiff,<br><br>v.<br><br>TENNESSEE TECHNOLOGICAL UNIVERSITY,<br><br>    Defendant. | Case No. 2:24-cv-00054<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., District Judge

**REPORT AND RECOMMENDATION**

On September 8, 2025, the Court found that pro se Plaintiff Lorenz Dahl III had not complied with the Court's order to effect service of process on Defendant Tennessee Technological University (TTU) by July 28, 2025. (Doc. No. 20.) The Court ordered Dahl to show cause why the Magistrate Judge should not recommend that the Court dismiss this action under Federal Rule of Civil Procedure 4(m) for Dahl's failure to serve TTU or under Rule 41(b) for Dahl's failure to prosecute his claims and keep the Court apprised of his current mailing address. (*Id.*) Dahl has not responded to the Court's show-cause order.

For the reasons that follow, the Magistrate Judge will recommend that the Court dismiss this action without prejudice under Rule 4(m) and Rule 41(b).

**I.    Relevant Background**

This civil rights action brought under 42 U.S.C. § 1983 arises out of TTU's refusal to run Dahl's advertisement in a university-owned newspaper. (Doc. No. 1.) Dahl initiated this action on August 7, 2024, by filing a complaint against TTU alleging constitutional claims under the First and Fourteenth Amendments. (*Id.*) Dahl paid the Court's civil filing fee (Doc. No. 4), and the

Court referred this action to the Magistrate Judge to oversee service of process and to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 6.) The Court advised Dahl "that he must keep the [C]ourt informed of his current address or this action will be subject to dismissal." (*Id.*)

At Dahl's request, the Clerk of Court issued a summons addressed to TTU on August 19, 2024. (Doc. No. 5.) But, on December 9, 2024, the Court found that the deadline to effect service of process under Rule 4(m) had passed, there was "no indication that Dahl served the summons on TTU with a copy of his complaint . . . , and TTU ha[d] not appeared in this action or responded to Dahl's complaint." (Doc. No. 7, PageID# 18.) The Court therefore ordered Dahl to show cause "by December 27, 2024, why the Magistrate Judge should extend the deadline to effect service of process on TTU and should not instead recommend dismissal of this action under Rule 4(m) for Dahl's failure to effect service." (*Id.* at PageID# 19.) The Court pointed Dahl to "[r]esources for pro se litigants, including an information sheet about service of process, [ ] available on the Court's website." (*Id.*) And the Court warned Dahl that failure to comply with the Court's show-cause order would "likely result in a recommendation that this action be dismissed." (*Id.* at PageID# 20.)

Dahl filed a response to the Court's show-cause order (Doc. No. 8), a motion to extend the service deadline (Doc. No. 10), and a letter detailing his unsuccessful effort to serve TTU and proposals for perfecting service should the Court grant his motion for an extension of time to do so (Doc. No. 11). The Court granted Dahl's motion and extended the service deadline to March 31, 2025. (Doc. No. 12.)

On February 24, 2025, Dahl returned a proof or service affidavit stating that he served TTU by certified mail on February 17, 2025. (Doc. No. 15.) Dahl attached a certified mail receipt addressed to TTU and signed by Ricardo Cartwright. (*Id.*) But TTU did not appear or respond to

Dahl's complaint, and the Court found that Dahl "ha[d] not demonstrated that Cartwright was authorized to accept service on TTU's behalf and, thus, ha[d] not demonstrated that he ha[d] properly effected service in compliance with Rule 4." (Doc. No. 16, PageID# 44.) The Court ordered Dahl "to file a notice demonstrating that Cartwright is authorized to accept service for TTU in compliance with the Tennessee and Federal Rule of Civil Procedure by May 26, 2025." (*Id.*) Alternatively, the Court ordered that, "[i]f Dahl [was] not able to demonstrate that Cartwright is authorized to accept service for TTU, [Dahl] may show cause why the Court should further extend the service deadline so that he can achieve service of process." (*Id.* at PageID# 44–45.) The Court warned Dahl that, if he could not "demonstrate proper service or show cause why the Court should further extend the service deadline, the Court may recommend that this action be dismissed without prejudice under Rule 4(m)." (*Id.* at PageID# 45.)

The Court received a letter from Dahl on May 27, 2025, responding to the Court's order, describing his ongoing efforts to serve TTU, and requesting another extension of time to effect service. (Doc. No. 17.) The Court found "that good cause exist[ed] to extend the deadline for service under Federal Rule of Civil Procedure 4(m)" "[b]ecause Dahl [was] diligently attempting to comply with the Court's orders and to effect service of process on TTU[.]" (Doc. No. 18, PageID# 51.) The Court further extended the service deadline and ordered Dahl to effect service of process on TTU by July 28, 2025. (Doc. No. 18.) The Court warned Dahl "that failure to perfect service of process by the extended deadline [would] likely result in a recommendation that the Court dismiss Dahl's complaint under Rule 4(m) for failure to effect service of process." (*Id.* at PageID# 53.) A copy of the Court's order mailed to Dahl at his address of record was returned unclaimed. (Doc. No. 19.)

3

Case 2:24-cv-00054    Document 22    Filed 11/05/25    Page 3 of 12 PageID #: 61

On September 8, 2025, the Court found that Dahl still "ha[d] not filed proof of service on TTU, and TTU ha[d] not appeared or responded to Dahl's complaint." (Doc. No. 20, PageID# 55.) The Court ordered Dahl to show cause why the Magistrate Judge should again "extend the deadline to effect service of process on TTU and should not instead recommend dismissal of this action under Rule 4(m) for Dahl's failure to effect service or under Rule 41(b) for Dahl's failure to prosecute his claims and keep the Court apprised of his mailing address." (*Id.* at PageID# 57.) The Court warned Dahl that failure to comply with its order to show cause would "likely result in a recommendation that this action be dismissed." (*Id.*) A copy of the Court's show-cause order mailed to Dahl at his address of record was returned with a note that Dahl is no longer at that address. (Doc. No. 21.)

The docket reflects that Dahl has not responded to the Court's most recent order to show cause and has not filed adequate proof of service on TTU or made any other filings in the action.

II.  **Legal Standards**

   A.  **Rule 4(m)**

"[T]he requirement of proper service of process 'is not some mindless technicality[,]'" *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quoting *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)), nor is it "meant to be a game or obstacle course for plaintiffs[,]" *Ace Am. Ins. Co. v. Meadowlands Dev. Ltd. P'ship*, 140 F. Supp. 3d 450, 455 (E.D. Pa. 2015). Rather, it goes to the very heart of a court's ability to hear a case. "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012); *see also Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (explaining that "[s]ervice is . . . not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's assertion of jurisdiction over the lawsuit'" (citation omitted)). Where personal jurisdiction is not

properly established, a court cannot exercise its authority consistent with due process of law. *See Friedman*, 929 F.2d at 1156–57.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (first citing Fed. R. Civ. P. 4(m); and then citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Otherwise, the language of Rule 4(m) mandates dismissal, either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996). In light of this plain language, it is well established that Rule 4(m) empowers a court to dismiss complaints without prejudice "upon the court's own initiative with notice to the plaintiff." *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1174 (9th Cir. 2002); *see also Friedman*, 929 F.2d at 1155 n.4 (noting that "the issue of ineffective service of process may be raised sua sponte").

The Sixth Circuit has directed district courts to consider seven factors in "deciding whether to grant a discretionary extension of time in the absence of a finding of good cause:"

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;

(5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;

(6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and

(7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Oakland Physicians' Med. Ctr., LLC*, 44 F.4th at 569.

### B. Rule 41(b)

Federal Rule of Civil Procedure 41(b) "confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (citing *Knoll v. AT&T*, 176 F.3d 359, 362–63 (6th Cir. 1999)); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) (recognizing "the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"); *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) ("It is well settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute."). Dismissal for failure to prosecute is a tool for district courts to manage their dockets and avoid unnecessary burdens on opposing parties and the judiciary. *See Schafer*, 529 F.3d at 736 (quoting *Knoll*, 176 F.3d at 363). The Sixth Circuit therefore affords district courts "substantial discretion" regarding decisions to dismiss for failure to prosecute. *Id.*

Courts look to four factors for guidance when determining whether dismissal under Rule 41(b) is appropriate: (1) the willfulness, bad faith, or fault of the plaintiff; (2) whether the defendant has been prejudiced by the plaintiff's conduct; (3) whether the plaintiff was warned that failure to cooperate could lead to dismissal; and (4) the availability and appropriateness of other, less drastic sanctions. *Knoll*, 176 F.3d at 363 (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612,

615 (6th Cir. 1998)). Under Sixth Circuit precedent, "none of the factors is outcome dispositive," but "a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.* (citing *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)); *see also Muncy v. G.C.R., Inc.*, 110 F. App'x 552, 555 (6th Cir. 2004) (finding that dismissal with prejudice "is justifiable in any case in which 'there is a clear record of delay or contumacious conduct on the part of the plaintiff'" (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001))). Because dismissal without prejudice is a relatively lenient sanction as compared to dismissal with prejudice, the "controlling standards should be greatly relaxed" for Rule 41(b) dismissals without prejudice where "the dismissed party is ultimately not irrevocably deprived of his [or her] day in court." *Muncy*, 110 F. App'x at 556 (citing *Nwokocha v. Perry*, 3 F. App'x 319, 321 (6th Cir. 2001)).

III.     **Analysis**

    A.     **Failure to Effect Service of Process**

More than 450 days have passed since Dahl initiated this § 1983 action asserting First and Fourteenth Amendment claims against TTU. (Doc. No. 1.) The Court has repeatedly informed Dahl that he is responsible for serving process on TTU in accordance with the Federal Rules of Civil Procedure and warned him that failure to effect service in accordance with the rules and this Court's orders will likely result in dismissal of this action. (Doc. Nos. 7, 16, 18, 20.) The Court pointed Dahl to resources for pro se litigants, including information about effecting service of process, and explained the federal and state rules governing service of process in this action. (Doc. Nos. 7, 16, 18.) The Court has also twice extended Dahl's deadline for effecting service of process on TTU. (Doc. Nos. 12, 18.) Despite the Court's most recent warning, Dahl has not offered any explanation for his failure to effect service of process on TTU. Dahl therefore has not demonstrated good cause for another extension of time to complete service under Rule 4(m).

A further discretionary extension of the service deadline is not appropriate considering the seven relevant factors that the Sixth Circuit articulated in *Oakland Physicians Medical Center, LLC*, 44 F.4th at 568–69. The second and fourth factors—prejudice to the defendant and prejudice to the plaintiff—weigh in favor of granting Dahl a discretionary extension. There is no indication that TTU would be unduly prejudiced by a further extension of the service deadline. *See id.* at 571 (noting that "examples of prejudice" include "'a defendant's inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events'") (quoting *Nartron Corp. v. Borg Indak, Inc.*, 848 F. Supp. 2d 725, 748 (E.D. Mich. 2012)). The events underlying Dahl's claims are relatively recent, as Dahl alleges that the acts in question took place in April and August of 2023. (Doc. No. 1.)

The Court's refusal to extend the service deadline further may cause substantial prejudice to Dahl because his claims against TTU would likely be time-barred if he re-asserted them in a new action. Claims brought under § 1983 are subject to "the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *Id.* (citing Tenn. Code Ann. § 28-3-104); *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (same). However, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013). Because more than a year has passed since TTU's challenged actions occurred, it is likely that Dahl's claims would be time-barred if he reasserted them in a new action. However, "the running

of the statute of limitations does not require a court to grant a discretionary extension[.]" *Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 570 (collecting cases).

The fifth and sixth factors—whether the plaintiff made any good faith efforts to effect service of process or was diligent in correcting any deficiencies and whether the plaintiff is a pro se litigant deserving of additional latitude to correct service defects—are effectively neutral in this analysis. While Dahl initially made good faith efforts to effect service of process on TTU, he has not yet perfected service and has stopped responding to the Court's orders to show cause. There is no indication that additional time would lead to Dahl accomplishing service on TTU.

The first, third, and seventh factors weigh against an extension. A further extension would be well beyond the 90-day time period for service under Rule 4(m), as more than 450 days have passed since Dahl initiated this action. There is no clear indication that TTU has actual notice of this action. And there do not appear to be any unique equitable factors weighing in favor of an extension.

Considering the seven relevant factors as a whole, the Court finds that dismissal of Dahl's claims against TTU without prejudice under Rule 4(m) is appropriate.

**B.     Failure to Prosecute**

Dismissal of this action is also appropriate under Rule 41(b) because the four relevant factors, considered under the "relaxed" standard for dismissals without prejudice, show a record of delay by Dahl.

**1.     Bad Faith, Willfulness, or Fault**

A plaintiff's actions demonstrate bad faith, willfulness, or fault where they "'display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [plaintiff's] conduct on those proceedings.'" *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Mulbah*, 261 F.3d at 591). There is little indication that bad faith has motivated Dahl's conduct.

However, because the Court warned Dahl that these failures could result in dismissal, they indicate willfulness or fault for purposes of Rule 41(b) and therefore "tip[ ] the scale in favor of dismissal on the first factor." *Hatcher v. Dennis*, No. 1:17-cv-01042, 2018 WL 1586235, at *1 (W.D. Tenn. Mar. 30, 2018). This factor therefore supports dismissal.

### 2. Prejudice

The Sixth Circuit has held that "[a] defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is 'required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Carpenter*, 723 F.3d at 707 (second alteration in original) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)); *see also Schafer*, 529 F.3d at 739 (same). Such prejudice typically arises in the discovery context. *See, e.g.*, *Harmon*, 110 F.3d at 368 (finding prejudice where plaintiff failed to respond to defendant's interrogatories and a related motion to compel); *Wright v. City of Germantown*, No. 11-02607, 2013 WL 1729105, at *2 (W.D. Tenn. Apr. 22, 2013) (finding prejudice where defendant "expended time and money pursuing [plaintiff's] required initial disclosures and deposition testimony"). Notably, time and effort spent on "typical steps in the early stages of litigation[,]" such as answering a complaint or filing pretrial motions to advance the defendant's position, are not actions "necessitated by any lack of cooperation" and therefore do not weigh in favor of dismissal for failure to prosecute. *Schafer*, 529 F.3d at 739. The Sixth Circuit explained in *Schafer v. City of Defiance Police Department* that "[i]f such efforts . . . [were] alone sufficient to establish prejudice," for the purpose of Rule 41(b), "then every defendant who answers a complaint and responds even minimally to a lawsuit would be able to claim prejudice[,]" a "result [that] would defy common sense." *Id.* at 740.

TTU has not appeared in this action and therefore has not wasted any time, money, or effort in pursuit of cooperation that Dahl was legally obligated to provide. This factor weighs against dismissal.

### 3. Prior Notice

Whether a party was warned that failure to cooperate could lead to dismissal "is a 'key consideration'" in the Rule 41(b) analysis. *Schafer*, 529 F.3d at 740 (quoting *Stough*, 138 F.3d at 615). The Court warned Dahl at the outset of this action "that he must keep the court informed of his current address or this action will be subject to dismissal." (Doc. No. 6, PageID# 17.) And the Court repeatedly warned Dahl that failure to effect service of process on TTU and to respond to the Court's show-cause orders could lead to dismissal. (Doc. Nos. 7, 16, 18, 20.) This factor therefore supports dismissal. *Schafer*, 529 F.3d at 740.

### 4. Appropriateness of Other Sanctions

The less-drastic sanction of dismissal without prejudice is available and appropriate here. Dismissal without prejudice balances the Court's interest in "sound judicial case and docket management" with "the public policy interest in the disposition of cases on their merits . . . ." *Muncy*, 110 F. App'x at 557 n.5; *see also Mulbah*, 261 F.3d at 590–91. Such a sanction is particularly appropriate in cases of prolonged inactivity and where, as here, the plaintiff appears pro se. *See Schafer*, 529 F.3d at 737 (noting that courts apply the four-factor test "'more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal'" (quoting *Harmon*, 110 F.3d at 367)).

Considering the four relevant factors, dismissal of Dahl's complaint without prejudice is also appropriate under Rule 41(b).

### IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that this action be DISMISSED WITHOUT PREJUDICE under Rule 4(m) for Dahl's failure to effect service of process on TTU and under Rule 41(b) for Dahl's failure to prosecute his claims.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 5th day of November, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge